Is it Berliner, Berliner? Berliner, your honor. Good morning and may it please the court. My name is Dana Berliner and I'm here with my colleagues Saranjan Sen, Elizabeth Vader-Hosey, and many other contests. I've got quite a few questions about exactly what what it is that we need to resolve as a court about our jurisdiction and what issue, what relief is sought, mootness. I've got quite a few questions. The whole ordinance or resolution or whatever it was, the April 4th that you get ready to describe has been rescinded, is that correct? That's correct, your honor. All right, so the district court said that the case was not moot because they were planning to still seeking nominal damages and attorney's fees. It seems to me the attorney's fees issue is not a basis for jurisdiction because the U.S. Supreme Court has held that you're not a prevailing party basically and the fact that the government changed its position is not due to anything, to a judgment that you got. So it doesn't seem to me attorney's fees get you there. So is it is your position that what's the jurisdictional hook here is nominal damages for due process violation or is it something in addition to that? So the issue of mootness has not been briefed because the other side did not appeal. Well, whether it's briefed or not we have to get into it so I'm getting into it. I raise that to offer that if this is an issue that the court would like to explore in depth that we I think the court would benefit from actual relief. Okay, we'll ask for that but let me ask you what your contention is. What relief exactly at this point do you think that the district court could grant in on what basis? So the relief that we're asking for is a declaration that the statutory provision in the Mississippi statute to not give any individual notice of a slum and blight determination violates due process. So we're asking for declaratory relief and a dollar in nominal damages. All right, so be clear you're not saying that they were entitled to notice at the outset when the city was considering this. They're not entitled to notice until the city has passed the resolution and says okay we're making a declaration this area is whatever you want to call it. Slum and blighted. So I think, and this is explored in both the Brody case and the McKay case, I think there would have to be some kind of notice prior to hearing because the hearing itself is the opportunity for owners to present evidence. Again, we need to be very specific. When is it that you say the due process right to notice attached and what was the injury? So there would need to be notice prior to the April 4th hearing so that the owners could present their evidence because that is their one opportunity to present evidence and then there would need to be notice of the decision because the decision is what starts the 10-day clock ticking and again that's what happened and what the court ruled in the Brody case. Okay, exactly what was the injury? The injury was the, well there were two injuries really. One injury was the deprivation of a dispense and as the complaint alleges, a winning defense against the use of eminent domain. The second injury is the deprivation of a... Well let me, that's another question. Is it really a defense to eminent domain? Are you saying it's a defense to the proceeding, bringing the proceeding? You're saying I don't, we have a property right not to even have to go through eminent domain or you're saying it's the loss of the eminent domain? So there are two interests and one, I think the easiest way to think of it is one is the property interest in Brody and one is the property interest in MAK. In Brody it is the defense against eminent domain because under the Wiggins case this is the single opportunity to present what is actually quite a strong dispositive defense against the use of eminent domain and you don't get to bring it later. Now what's your authority you don't? Because Wiggins has been on the books for five years. It's been cited three times by state cases. So do you have a state case that actually says that what happened to Wiggins, just a couple paragraph decision, where he pled to over a thousand violations? Do you have a state case that says thereafter because of Wiggins an individual property owner will not get individual notice past the 10 days nor an opportunity to put the government to its public use burden? Do you have any state case that has interpreted Wiggins to sort of forfeit all the rights that I read Mississippi law to guarantee property owners? No, your honor. There isn't a second case about it. This doesn't come up very often and the language in Wiggins is unequivocal. Wiggins in his, so it's important to understand that even though Wiggins property it sounds like was a real mess, he was challenging not the designation of his property but of the area. But very, it's a minimal opinion. It looked to me like he's challenging the legislative authority. He wanted to say it's a sham. That's different than saying hereafter because of Wiggins, although no court has said it in five years, no property owner gets an opportunity to put the government to its proof that there's substantial evidence of blight specific to that property. I don't see a case saying that. So it wouldn't be specific to that property. That's actually just not a defense at all. Saying my property was not blighted is not a in Mississippi and not under Berman, not under Pauk. All you can argue when you're dealing with the slum blight designation is that the designation of the area is invalid. I want to get back to mootness and what we're really arguing over here. What a court can, what relief a court can give at this point. There's not going to be an imminent domain procedure under the blight finding because that's all been revoked. The city's taken away the acre order so there's no blightness finding as to your client, any of your client's areas. Is that correct? That is currently correct. Okay, currently correct. So what, how do we, the district court said you get nominal damages for a due process violation. How does that fit into the current jurisprudence we have about standing and the injury and redressability and all that? I'm not sure I understand how that fits. Okay. Particularly where the the base ordinance that you're complaining about is gone. So the standing inquiry is done at the time. No, standing has to occur at all stages of the litigation, not just at the time. So the initial standing inquiry is at the time of the of the filing. Okay, right, we're past that. And after that the court then asks whether the government has borne its burden of showing mootness. That's, well, in this case both the fact of nominal, the proceeding of nominal damages and the voluntary cessation doctrine both prevent this case from being moved. That's FBI versus FCRA, that's Usai Boonam for nominal damages, and that's this court's decision in Crocker versus Austin where although that's the case about a vaccine mandate and there was both a general rule about religious exemptions from vaccines and there was a specific COVID mandate that's parallel here to the state statute that does not provide notice 43, 35, 13. So you're seeking declaratory judgment, not nominal damages. We're seeking both, Your Honor. Okay. And it is both the doctrines of voluntary cessation and the fact that nominal damages have been requested that both prevent. As to nominal damages, how does that fit in? How does that fit in with current thinking about regressibility, all of that? I see. So as to what the court said in Usai Boonam versus Krzyzewski, although I'm probably pronouncing both of those wrong, is that when a party has asked for nominal damages, that takes care of regressibility. So in this case, what this court said in bold is that a due process violation is complete at the time process was denied. Here, process was denied, no notice was given, they did not participate in the hearing, and that's the completed injury. They've asked for one dollar and a declaration for that completed injury, and under Usai Boonam, that is sufficient. Could post-deprivation process remedy the harm? The post-deprivation process did not and could not remedy the harm because, and this goes back to Judge Higginson's question, Wiggins says it's untimely, and I would direct the court, so all the briefing in Wiggins is in Westlaw, and what Wiggins attempted to argue was that there was not substantial evidence supporting the Slum and Flight designation there. There was evidence about Wiggins property, but this was a big area, and it doesn't appear there were problems with the rest of the area. So he was challenging the area designation, which under Berman v. Parker, under POC, that's what you've got to do. But suppose that all property owners in the 320-acre parcel opt out, so they don't get pre-deprivation notice, they don't know, they have no opportunity to participate in the April 4th hearing, but they get notice, say, on April 5th. They have an opportunity to opt out, and they all opt out. How does that not fix the DPC problem at the front? So the, actually, the city did not provide individual notice of opting out, but the— But your clients opted out. They got notice of this somehow. So I'm just asking you by hypothesis. I'm trying to understand the limits of the theory. Why would post-deprivation notice and an opportunity to opt out not remedy your conception of the DPC harm on the front side? Well, what it does, it's just like, I mean, it's voluntary cessation. This is what happens in lots of Section 1983 cases. There is a violation. Somebody sues about it. The city says, oh, we take it back. And that's, and then you get into voluntary cessation and all of this. Although I hadn't really thought of the line of inquiry. It's a little different than voluntary cessation. Judge Oldham is saying your clients opted out. Yeah, I'm not asking you a jurisdictional question. I apologize if there was an abrupt transition in the argument. I'm asking a merits question, which I'm trying to understand the theory. Because you said to my colleague, Judge Richman, that the DPC violation is completed on the 4th of April because there was a hearing, they didn't have an opportunity to present evidence, their properties were adjudicated, slummed and blighted. I'm deeply sympathetic to what you're saying. I completely understand why that would be true. What I'm asking is, would post-deprivation, so if there was notice on the 5th, and there was an opportunity to opt out on the 5th of April, why does that not fix the problem? And then if that's true, then I suppose it does have follow-on consequences for the jurisdictional question because then it questions whether and to what extent the DPC violation is in fact completed on the 4th. But I'm really trying to understand your 14th Amendment theory. I see. Thank you for clarifying, Your Honor. And I'm sorry, I misunderstood. So I think that if it were on the 5th, so the period for appeal closed on April the 14th, so it was by April the 15th that all of the due process rights had been ignored. So if it had been on the 5th, that certainly would affect the fact that they couldn't appeal because they would be able to get out of it before their appeal period closed. But that's not what happened. No one found out about this until sometime in August. So all of the due process violations then had been completed by August. When you say all, it's sort of back to my confusion as still Judge Richman's, which is, how many different due process violations were there? Are you saying the only remedy hereafter, Ocean Springs, as long as they get individual mail notice, then the legislative determination of blight would be valid? Or are you saying that because of Wiggins, the deprivation is the loss of a future defense against eminent domain? So they're both. And again, this is the Brody claim and the MAK claim. The deprivation of the defense is absolutely an injury, and the deprivation of the opportunity to be heard and the notice that you need to do that is also an injury. Okay, I guess I have an interrelated fact and the implications question. So I'm worried about our line of authority, Country Line. So what's the limiting principle? Would your remedy just entitle your client to say, my property isn't blighted? Or would the relief be that invalidation of the entire urban designation? And if it's the latter, what's the limiting principle that doesn't now mean every single property owner can intercede against zoning determinations? Where that, I think the Supreme Court has pretty clearly said, that's the stuff of politics. And when I look at this record, these are the facts. It looks like the property owners were triumphantly successful politically. They went in and it was rescinded. So the difference between, let me start with the question about zoning, because that's an issue that the district court had as well. There are three key differences between what happens here and zoning. The first is there is an actual legal statutory standard. And if you compare Board of Regents versus Roth versus, for example, Cleveland versus Loudermill, you don't get notice if it's just a matter of discretion. But you do get notice if in Cleveland versus Loudermill, if they could show there was no cause for their firing, they would win. Here, there is a statutory definition. If they can show the area does not meet that definition, they win. Those cases under Olin versus Joaquin Icona, which says that an interest is created by setting limitations on official discretion, that is a key difference. Zoning just doesn't do that. Zoning is, we think this would be a nice idea. There's not that kind of statutory limit. The second difference is in zoning, there's a million opportunities to challenge that later. You can do it in an enforcement proceeding. You can ask for a waiver and then do it then. There's lots of future opportunities here. In the words of the Wiggins Court, any future attempt to challenge is, quote, untimely, unquote. And thirdly, it goes directly to an explicit constitutional right, public use. So it's quite different. And then I would just point out that in County line, that was the setting of the rule. But people got notice and had an opportunity to challenge the application of that rule to them, whether or not they had, in fact, abandoned. May I conclude my answer? Thank you, Your Honor. And then finally, to answer your question, Judge Higginson, you can't just say my property isn't blighted. That is just not a defense to anything. You have to say the area designation is invalid. So everyone who owns property in the area is indeed entitled to individual notice. Every time somebody challenges blight and wins, and it happens all the time around the country, they challenge the area designation. Thank you. I've reserved three minutes for one more. And please, the court will now move for the city of Ocean Springs. Good morning, Your Honors. I want to touch on three points that the court's already noted. First being the Wiggins case. I think, at least according to my view, if I could sum up the appellant's argument on the Wiggins case in one sentence, it would be that a blight determination through the designation in the urban renewal area is, if so facto, a determination of public use. And because of that, that means it's an adjudication, an adjudicated decision that they are now in a procedural due process violation. They are subject to individualized notice on. Now, obviously, I disagree with that interpretation. Just a simple fact, reading the Wiggins case, it's a three-page case. Section three of the case, I believe, talks about public use in its entirety. If a designation of an area for blight equals public use, then why did the Wiggins court go on for one-third of the case talking about public use and how the city of Clinton had to satisfy that burden at the end of the case? So you read Wiggins to, and you say under Mississippi law, it doesn't forfeit your individual property owner's right later to put the government to its proof on public use? Absolutely not, Your Honor. Both on public use must be proved at the end of the domain stage as well as public necessity. While the case is a clear public necessity, it is a legislative determination. It is still subject to an abuse of discretion standard like the circuit court noted in this opinion. So both at the end of the domain phase, which obviously we're not at in this case, you've got to put on proof of public use and they can also challenge public necessity. Then what is the point of the blight designation? What's the point of it? I mean, the state of Mississippi, which I guess we'll hear from in a minute, says this is a post-Kelo development, that it's supposed to remedy some of the abuses in that Supreme Court decision. The city of New London. So if it doesn't do anything, what is the point of the blight designation? I think it's used just as through the legislative process and early planning tool to identify areas that are in need. Not necessarily the Thurman rule, although Mississippi doesn't point to imminent domain. I mean, there's several alternate avenues up and before you get to imminent domain. Cooperation with the citizens on infrastructure, rebuilding their homes. Obviously, it's in the record. This has never been the city's of Ocean Springs thought to use imminent domain. I think it's a legislative planning tool to identify areas to try to better the city. So they took a step. They formally convened a hearing. They formally adjudicated 320 acres of their citizens' land as slum and blighted with no intention whatsoever of ever using imminent domain against them. That's an extraordinary, seems like a very empty step. I think a part of urban renewal, through the urban renewal law, the city was looking at other cities like a neighboring city, Pasco, down the coast. It allows you to implement this redevelopment authority. That's a separate body that now exists. You can give a task to, maybe we're missing out on these grant funding opportunities that have been beneficial to these other coastal cities. That takes it out of the planning department, very limited means, takes it out of the Board of Aldermen to an extent. I mean, they can give their advice on where to go, but you're developing a redevelopment authority that says, hey, here's a whole new opportunity for the city through urban renewal, through redevelopment authority to pursue these objectives that they may be missing out on that has been a tremendous benefit to other coastal cities. So let's say a blight resolution passes, but months, years later, a property owner realizes, oh my gosh, I'm inside the line. I thought I was outside. Just under Mississippi law, can they still challenge that their house is not blighted and therefore shouldn't be destroyed and taken? Yes or no? Certainly at the imminent domain. You say certainly. So therefore, the reading of Wiggins is incorrect. So I just want sort of categorically from your point of view, Wiggins just does not present the problem that needs the constitutional solution. Maybe I'm misunderstanding. There's no residual effect of the resolution. It's going after grants. It's designating things, sort of zoning areas. But if someone later finds out that they were in something that they, even if they had no publication notice, they just didn't go because they thought they weren't inside of it. And then all of a sudden, there's an enforcement action. Am I correct that under Mississippi law, there's no echo from Wiggins that says, oh, you forfeited that. You missed it. I do think Wiggins stands for the principle that you can't have a collateral attack on a legislative decision after the 10th Circuit. But that's the MA, that's the 10th Circuit's concern. An individual always has to have the right to contest, right? The 10th Circuit under MAK case was briefed. They've got a whole separate statutory scheme for urban rule of law that sets forth. I know, but just the same problem, which is we don't want individual property owner, even if they had notice, to have forfeited their opportunity to say as to my property, you can't show up. Obviously, I know you know, Your Honor. It was certainly not the case in this case. But as they did, through the constructive notice of open meetings, whether you want to call it, they got actual notice or not. They showed up. And I mean, this is the textbook case. For what the case law prescribes on a political process. As the courts noted that, you know, the opponents address their government and multiple meeting after multiple hearing session was had to address their concerns and rescind their area and opt out. I guess I'm just wondering if 11-5175 is a rough analog to the Colorado law. So they could have objected had they done so within a certain time period. I presume it's jurisdictional to some extent. Is there an equitable opportunity if you missed it? I don't think 11-5175 is equivocable to the Colorado statute in MAK. That in the sense that, you know, the separate urban renewal statute sets forth certain factors that the city has in the blank determination. The separate 30-day window that a person has to appeal that blank determination. None of that is present in the general appeal statute in Mississippi. And it's certainly not bestridden in the urban renewal law of Mississippi. Can I get a yes or no to the question? Yes or no. I missed the 10-day window. My property, my home is inside of your 320 acres. I missed the 10-day window. I can or I cannot challenge the fact that you have declared me to be slumped and blighted. Yes or no. I don't believe so, Your Honor. I believe Mississippi has prescribed that blight is a standalone type. Got it. So if I go to sell my house and it turns out that my house is worth 10% of my neighbor's house who's on the other side of the slump and blighted line, I have no remedy under Mississippi law. Not as to the blight, sir. Got it. Additionally, Your Honor, I want to address the... But you had a remedy within the 10 days. So how is this not getting pretty close to what happened in the 10th Circuit? I misunderstood. I guess I misunderstood. You're saying the answer just as you did. The answer is after those 10 days, just by virtual publication notice, an individual property owner would have no opportunity. I think the other 10th Circuit cases, they prescribed in the statute enumerated in the statute of protections as to blight determination specifically. They've got specific factors on blight. They've got a 30-day appeal period. And so the court found that, well, if you've got a 30-day appeal period on the blight designation itself, then you are subject to notice. There's no such statute in Mississippi that as it relates to the blight determination, that's an individual type. But post-Kilo, blight would equate to public use. And you're saying there's no opportunity later? No, I don't think, like I said earlier, I don't think blight equates to public use, Your Honor. Not under Wiggins, not under any precedent in Mississippi. Not under Kilo. Public use and public assessor to both judicial determinations, at least public use. I know, but you've just said they won't be able to challenge it in adjudication if they miss the legislative opportunity. They would not. They would not. That's okay. Hmm. And again, going back to this legislative versus adjudicative process decisions. Do you think we have jurisdiction to declare in this case that the Mississippi statutory scheme regarding blight is infirmed because it doesn't give adequate notice and the opportunity to appeal? No, no, Your Honor. Why not, and why didn't you brief this? In terms of, you know, I can address the issue of mootness for the court. I mean, I do think that obviously the district court said the case is not moot. The appellant added to the record on, you know, the minutes of the Redevelopment Authority, and it's not in the record, but I certainly want to supplement, you know, up until August of last year, the most recent developments, the Urban Renewal Redevelopment Authority has been totally disbanded by the new board of the city. So there are no really, in that instance, no urban renewal efforts happening in the city. Of course, that was on an area, the third urban renewal area, that did not include the appellant's property. The only one that included the appellant's property was Urban Renewal Area 1, which in subsequent meetings were addressed in their government that were taken out. There was a second urban renewal area, which was never moved on, and there was a third urban renewal area of limited parcels. So on that point, you know, I don't, I think the nominal damages and standing says, you know, you can proceed on nominal damages if there's a procedural due process violation, which I don't think exists. Well, do we have jurisdiction to decide if there's a procedural due process issue? I don't see how it would be. Tell me exactly why we don't have jurisdiction to make that call. You know, what is the case of controversy in that the appellants... You just said nominal damages. They have standing to proceed. I don't understand your position. That they don't have standing to proceed given that their, you know, their allegation that, you know, there was some sort of taking in respect as to a blight determination, but the city following up and rescinding that April 4th resolution... Well, they're saying the fact that they couldn't appeal the blight determination was a nominal violation of their due process rights. Right. And you said we don't... I don't believe the blight determination is a stand-alone conduct. But that's a merits argument, not what Judge Richman said. I understand the question, the jurisdictional one. Yeah. If I may, I may defer that question to the State Mississippi. Okay. May I please deport Anthony Schultz on behalf of the state as an amicus for the city. I think I want to start with a few points. One, Judge Oldham, you mentioned impact on property values. I just want to make clear that in this case, there's been no allegations. I understand that. I'm sorry, there's been no what? No allegations by the plaintiffs. In fact, I think they expressly disclaimed it in the record that there's been any impact on property values by the blight designation. Can you tell me that that's true across the state of Mississippi, that when folks are doing this sort of thing using the post-Kelo procedure, that designating a property slum and blighted or part of a slum and blighted area has no impact on property values? I can't tell you, Your Honor. Also, it's possible that it actually might increase property values. That's an interesting assertion. It unlocks grant funding, federal and state. It starts urban renewal and downtime errors, revitalization. Pasco ruler, for example, is a city in Mississippi that used these authorities and actually had $60 million worth of investment from federal and state grant funding and actually increased their downtown. So property values might go up. Suppose I am a land use lawyer in your office and I'm part of an eminent domain proceeding that involves a slum and blighted area under the statute. Can I or can I not walk into court and say, Your Honor, this is gone through, this procedure Mississippi law has designated for the creation of a slum and blighted area. That satisfies public use under Kelo. No, you cannot. That's not sufficient? No. In fact, in cases like Wiggins itself, also Worley is a case from, I believe, 94. So what is the point of the slum and blight designation with respect to eminent domain? It is one of the, it's not the first step. It's one of the early steps that a city must do to unlock its access to urban renewal authorities. One of those authorities is eminent domain, but there's others, like I said, access to grant funding, rehabilitating properties, building roads, all sorts of other things. Yes, from an eminent domain standpoint. Yeah, but what's the relevance of it? So there is obviously a connection. Your brief very helpfully explains the connection between Kelo and the egregious overreach there and the statutory scheme and the slum and blight designation. And I'm asking you with respect to eminent domain, what relevance, I mean, I used to work for the state of Texas. I saw eminent domain cases. I understand how those used to work without this scheme. You don't need to have a slum and blighted designation to take eight feet along a highway. I'm asking you, why do you need to say that 320 acres of the city of Ocean Springs is slum and blighted with respect to the state's eminent domain power? The only impact it has is that if you want to use eminent domain for the purpose of urban renewal, you have to do this first. As your honor said, there are many other mechanisms for eminent domain outside of this. Is urban renewal a public use, yes or no? Yes, it is. Okay, so that's why I go back to my first question. Why could I not go into the district judge in Mississippi and say, I've met my public use. It's part of an urban renewal area. It's slum and blighted. I'm done. My case is over. Because you have to actually prove that you're remedying slum and blight, that you are. It's not pretextual that you're using the property for a public use. The fact that it is in an urban renewal area does not commit the city to using eminent domain nor does it justify eminent domain in and of itself. So if I decided that my renewal plan was to give the city of Ocean Springs to Pfizer to create an office park, you're suggesting that that's not sufficient? The fact that it would renew the urban area and everything else isn't a sufficient public use on its face? Well, it might be, but that is not because there is a slum and blight designation where the properties fell within the area. There are other steps you have to do and other proof you have to put on to show that that actually was being used for public use. And Wiggins, in fact, said that, that the city in that case presented testimony and evidence before the court of eminent domain showing that they would use the property for public use. So I end up in an... So now I own land in the 320 acres and I'm in a public... I'm in an eminent domain proceeding, right? Because the city has decided to use its urban renewal power to take my house from me. I'm Suzette Kilo. I live in the 320 acres. Yes or no, I can say I was erroneously designated as slum and blighted way back five years ago, Your Honor. Yes, you're right. I didn't use my 10-day appeal, but I would like to collaterally attack now the fact that I shouldn't be in the slum and blighted area. And so whatever other arguments the state has and whatever arguments the city has, you can't say I was slum and blighted five years ago. I can do that? One thing I just want to add before you answer the question directly, Your Honor, is that as my friend on the other side mentioned earlier, it is not a designation of your property as slum and blighted. In fact, I believe my colleague said that Wiggins himself didn't say my property. You know, it's about the area. I appreciate the clarification, but my Suzette Kilo pink house is inside the 320 acres and you, the state of Mississippi, has come to take it from me. And I say, listen, whatever they can do or can't do, they cannot say urban renewal is a public use as to my little pink house because it was erroneously designated as slum and blighted five years ago. I don't think that's correct. I can't do that. No, I'm sorry. You can challenge the public use to which the taking would be put. The only thing Wiggins says that you cannot do outside of that 10-day window is challenge the legislative determination that the area, by resolution, was designated as slum and blight. That's what I'm saying. That's my question. But there still has to be proof of public use. It is still the burden on the city to show public use as it is any type of public use. Well, that's what I wondered too. My house sits in the middle of a block, let's say, that is drug-ridden. I've got a pristine house with a fence around it, clean as a whistle. But everybody around me, it's overrun with drug users and sanitation problems. And the city says, urban renewal, we want to take out this three-block area, including your house, because we're going to put low-income housing that's fresh and clean with security, et cetera. Now, can I say, you can't take my house as a slum because my house is fine. Well, what you cannot say is that the area, if it was designated as slum and blight, pursues a urban renewal area law. You cannot challenge that designation. But you certainly could argue that a taking of my property that falls within this area does not satisfy the requirements for public use. When you say certainly, I'd love it if you'd give us specific Mississippi cases. So my question is sort of hovering about what they've just asked. Yes or no, this resolution is or isn't KELO-sufficient evidence for the city to take the property? No, it's not. Wiggins says that. Morley says that. Do you have any? Morley, okay. So I'm going to look at Morley because I think I know Wiggins. Yes or no, an individual property owner, even post-resolution, even if they didn't show up or didn't get notice, will have later one individual notice as to their property and two, an opportunity to go into court and challenge the blight determination in Mississippi law. And do you have cases post-Wiggins? If there was an eminent domain proceeding against that property. They would get individual notice and they'd get an opportunity to challenge it. With the caveat that Wiggins says the one thing you cannot challenge in an eminent domain proceeding for a renewal is the actual designation of the area. But you can challenge that your property is blighted? No, you can challenge that your property is not being taken for a proper public use, that is pretextual, for example, that the public use to which it can be taken for is not. If we don't agree and if we think this is analogous roughly to the situation of the 10th Circuit, so what would be the consequences for Mississippi law? Well, I think if we were to say there's a procedural due process right to individual notice before the hearing, as well as some future opportunity to challenge this to your property. Well, would that be damaging to your architecture of law? Oh, certainly, Your Honor, because as I take it when I heard from my colleague today is that it would require individual prior notice before a city or municipality was considering designating an area as someone blighted. So that would require notice to potentially thousands of citizens, whenever a municipal government wanted to take an action related to early renewal. But it also wouldn't be limited to early renewal, Your Honor. Their reading of 1151.75 is that it provides an individual entitlement to a cause of action that implicates notice for every citizen covered by a potential municipal ordinance. That's thousands, that's the entire state of Mississippi. Well, it doesn't have to be that broad. You could just say, listen, you want to designate it as someone blighted or you want to call it something else with some other label or whatever for grant programs or whatever urban rule you want to do, have at it. But if at some point in the future you decide that you're going to take someone's home, you're going to have to give them individual notice and the opportunity to say they should not be within the side of the slum and blighted area. That is a much narrower remedy, it seems to me, than saying like, yes, you get individual notice for every municipal ordinance. Well, I don't see anything that may be a distinction, Your Honor, because the actual designation, as you mentioned, is about an area. It does not implicate individual property rights. It does not affect the taking at this point that's been met. And it does not, in this case at least, affect property values because it might increase property values in some cases. So I don't see how you can draw that very narrow distinction to say, oh, it just applies to slum and blight. And just to go back to Judge Higginson's question, I would push back on the notion that Mississippi law and Colorado law are even closely analogous. Mississippi law has a general provision by which any aggrieved citizen in the municipality can challenge for 10 days in a very discretionary and limited review on the record before the municipality that I disagree with this legislative decision. I have a question. Do we have, does this court have jurisdiction to say that once a city designates an area as blight, whatever, you have to give notice with it so that people can actually challenge the 10-day period in court? Do we have jurisdiction to say that's a due process violation or not? Do we have jurisdiction? We were not a party before the district court. We have not taken a position on just the stability. I would say that your question, I think, ties to one thing we have taken a position on, which is facial relief. And my understanding is plaintiffs are still asking for facial relief trying to track down two Mississippi statutes. I'm sorry. Sorry. They're asking for facial relief against two statutes. Let's say they're not asking for facial relief. And I'm with the state position on do we have jurisdiction to make a declaratory judgment about the constitutionality of this scheme? Once a decision, once a blight decision is made, do we have jurisdiction to say it violates due process or not if individual property owners don't get notice? Do we have jurisdiction or not? And why? Either way. I would say my inclination, again, we haven't taken a position on this one. My inclination is to say no because the plaintiffs in this case are not subject to any active urban blight area designation. My understanding is there might be one in the city now, but it certainly does not include plaintiff's properties as I understand it indirectly. What about their claim for nominal damages? They say that the 10 days passed, they didn't know about it. Why did they not get nominal damages for due process violation? I would say, Your Honor, because the 10-day period does not create individual rights to know this opportunity occurred. That is the position of the Mississippi Supreme Court in numerous cases. It is a general mechanism by which citizens have been permitted. So we have jurisdiction, then, to say yes or no. I'm just asking about our jurisdiction. You keep saying no, we don't, and then you say we do. I need an answer. I just hesitate because we are not taking a decision in the briefing. My inclination here, Your Honor, answering questions is, I consider this a guilty no. But I think it's okay. I'm not taking a position on that. Well, we're asking the state to take a position. We're happy to supplement the briefing, but that would be... All right, we'll get a request. And I want a briefing from the state about our jurisdiction and whether the Mississippi law comports with due process. Do we have the jurisdiction to answer that?  I'm just going to wait on my time. Is there any more questions, Your Honor? Thank you, Your Honor. Thank you, Your Honors. Let me address public use and slum flight. So here's the story. Slum and blight, a slum and blight designation is what allows cities to take property that is not blighted. They designate the area and then they can take anything within it. That's PAWP and that's Berman v. Parker. So the reason that it's so important that it's an area-wide designation, the reason why it doesn't help if your property isn't blighted is because if you are in a validly designated area, your property can be taken no matter what its condition. Let me read to the court from Wiggins. So it says, in an eminent domain proceeding, the question whether the contemplated use be public shall be a judicial question and determined without regard to legislative assertion that the use is public. Here, the averred public use was urban renewal. And then they say, Wiggins wanted to say that the area doesn't validly meet the definition, but that's untimely. So Wiggins himself, who, by the way, said in his reply brief he did not have notice, was not allowed to challenge the area designation. And that is, and the other parties have conceded, you can't challenge the area designation as a defense. That's over with. You have a 10-day period that you are not told about. That is a problem. The other thing that the state and the city almost said was that there's no real statutory limit. It's just legislative discretion of whether an area is slum and blighted. That just runs flat into the statutory text of 43-35-3, which has quantitative measurements. There are two lists. You've got to have one thing for each list. The first thing has to cause the second thing. It's a substantive limit on these area designations, and it's important. It's something that people win on all over the country with very similar definitions. Ohio, Pennsylvania, Virginia all have similar statutory structures. You get to challenge later in those states. I also want to refer the court to a couple paragraphs of the complaint. Paragraph 96 points out that the city did, in fact, talk about acquiring the properties. It did not say we won't do that. Paragraphs 285 to 92 talk about the fact why this matters now. This church and all of the plaintiffs have to stay on alert to see if the city's doing something because they're not going to get notice. We talk about how they cannot stay on alert forever. In practical terms, what the church is doing is designating somebody every week to check, and that's due process. Counsel, I wanted to make sure you had a chance to get out your full rebuttal, but I have one quick question before you sit down. Assuming we have jurisdiction, if we wrote an opinion that said a slum and blight designation under this statutory scheme does not constitute public use, would that remedy all of the various injuries that you have alleged? I don't think the court can say that. The Mississippi courts in Pawkin of Wiggins have said it is a public use. I'm talking about, we're interpreting a federal constitution, as you know. And so there is the, I understand the premise of the case, right, is that if you lose this, that state procedural right to appeal and challenge and the ordinances and everything else, you're going to be hamstrung on the back side. When it comes to the Fifth Amendment and how the Takings Clause works, and I'm asking you, is there a Fifth Amendment remedy to the front end state law deprivation? Even under Berman v. Parker, that also says if a slum and blight in that state, that was the D.C. definition of blight, then it's public use. So I don't think the court has the option to say that. It does have the option to say people have to have the hearing and they have to have notice in order to have the hearing to make the challenge. Just one question related to that. Are you saying there is double constitutional protection, front end, standalone, and then takings at the end? Or are you saying in Mississippi, because of the quirk of Wiggins, we have to recognize a PDP claim in order to protect the takings claim leader? Yes, and that's Brody. But is that what your argument, your argument's the latter? We're arguing both, Your Honor, but Brody is narrower. But at the hearing in front of Judge McNeil, you said the only reason you have a constitutional claim is because of Wiggins. Yes, Your Honor, that is what gave rise to it. So that's the Brody claim. But we also talked extensively about MAK, which is in the court about the statutory right to be able to bring the challenge. If the state is going to be briefing jurisdiction, we'd request it. Absolutely. Everybody's going to get full opportunity to discuss it.  That will conclude the...